2016-1298

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ESTES EXPRESS LINES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in No. 11-597C, Judge Lydia K. Griggsby

## BRIEF OF APPELLEE, UNITED STATES

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Assistant Director

DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

March 21, 2016                    Attorneys for Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF RELATED CASES ................................................... vi

STATEMENT OF THE ISSUE ............................................................... 1

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS ................... 2

    I.      Nature Of The Case ............................................................ 2

    II.     Background ...................................................................... 3

SUMMARY OF ARGUMENT ............................................................... 9

ARGUMENT ....................................................................................... 9

    I.      Standard Of Review ......................................................... 9

    II.     A Valid Claim And Contracting Officer's Final Decision
           Are Jurisdictional Prerequisites For A CDA Action ........... 10

    III.    Estes Failed To Submit A Valid CDA Claim Before
           Commencing Suit .......................................................... 14

          A.     Estes's March 27, 2009 Email ................................... 16

          B.     Estes's May 6, 2009 Past Due Notice ....................... 17

          C.     Estes's May 14, 2009 Email ..................................... 21

          D.     Government Actions Cannot Substitute For A Valid
               CDA Claim ............................................................. 22

CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*AAB Joint Venture v. United States*,
    74 Fed. Cl. 367 (2005) .......................................................................14

*Alliant Techsystems, Inc. v. United States*,
    178 F.3d 1260 (Fed. Cir. 1999) ........................................................11

*BLR Group of Am., Inc. v. United States*,
    96 Fed. Cl. 9 (2010) .............................................................. 13, 19, 24

*City of Burbank v. United States*,
    47 Fed. Cl. 261 (2000) .....................................................................13

*Contract Cleaning Maint., Inc. v. United States*,
    811 F.2d 586 (Fed. Cir. 1997) .........................................................12

*D.L. Braughler Co. v. West*,
    127 F.3d 1476 (Fed. Cir. 1997) ............................................ 16, 17, 18

*Delaware Cornerstone Builders, Inc. v. United States*,
    117 Fed. Cl. 539 (2014) ...................................................................14

*England v. Swanson Grp., Inc.*,
    353 F.3d 1375 (Fed. Cir. 2004) ........................................................12

*Estes Express Lines v. United States*,
    108 Fed. Cl. 416 (2013) .....................................................................8

*Estes Express Lines v. United States*,
    123 Fed. Cl. 538 (2015) .....................................................................3

*Estes Express Lines v. United States*,
    739 F.3d 689 (Fed. Cir. 2014) .................................................. vi, 3, 8

*Executive Court Reporters, Inc. v. United States*,
    29 Fed. Cl. 769 (1993) .....................................................................18

*Hamza v. United States*,
31 Fed. Cl. 315 (1994)......................................................................................20

*Henke v. United States*,
60 F.3d 795 (Fed. Cir. 1995) ...........................................................................10

*Inter-Coastal Xpress, Inc. v. United States*,
296 F.3d 1357 (Fed. Cir. 2002) ........................................................................11

*J.P. Donovan Constr., Inc.*,
ASBCA No. 55335, 10-2 B.C.A. ¶ 34,509 (July 16, 2010)................................24

*James M. Ellett Const. Co. v. United States*,
93 F.3d 1537 (Fed. Cir. 1996) .............................................................. 12, 13, 23

*K-Con Bldg. Sys., Inc. v. United States*,
778 F.3d 1000 (Fed. Cir. 2015) ........................................................................12

*M. Maropakis Carpentry, Inc. v. United States*,
609 F.3d 1323 (Fed. Cir. 2010) .................................................................. passim

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
298 U.S. 178 (1936) ..........................................................................................9

*OK's Cascade Co. v. United States*,
87 Fed. Cl. 739 (2009)......................................................................................24

*Paragon Energy Corp. v. United States*,
645 F.2d 966 (Ct. Cl. 1981)..............................................................................24

*Placeway Constr. Corp. v. United States*,
920 F.2d 903 (Fed. Cir. 1990) ..........................................................................20

*Reflectone, Inc. v. Dalton*,
60 F.3d 1572 (Fed. Cir. 1995) .............................................................. 13, 16, 18

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) ............................................................................9

*Rocovich v. United States,*
   933 F.2d 991 (Fed. Cir. 1991) .............................................................................10

*Roxco, Ltd. v. United States,*
   77 Fed. Cl. 138 (2007).......................................................................................20

*Scott Timber Co. v. United States,*
   333 F.3d 1358 (Fed. Cir. 2003) .........................................................................14

*Skelly & Loy v. United States,*
   685 F.2d 414 (Ct. Cl. 1982)...............................................................................24

*United States v. Sherwood,*
   312 U.S. 584 (1941) ..........................................................................................10

*W.M. Schlosser Co. v. United States,*
   705 F.2d 1336 (Fed. Cir. 1983) .........................................................................13

*Walsky Constr. Co. v. United States,*
   3 Cl. Ct. 615 (1983) ..........................................................................................20

## STATUTES AND REGULATIONS

28 U.S.C. § 1491 .......................................................................................... 10, 11

41 U.S.C. §§ 7101-7109 ................................................................................. passim

48 C.F.R. § 2.101 .......................................................................................... 13, 19

48 C.F.R. § 33.201 ...............................................................................................19

## STATEMENT OF RELATED CASES

A previous appeal from this case under the same title, Federal Circuit No. 2013-5056, was decided on January 3, 2014 by Chief Judge Prost and Circuit Judges Reyna and Taranto. *Estes Express Lines v. United States*, 739 F.3d 689 (Fed. Cir. 2014). Pursuant to Federal Circuit Rule 47.5(b), appellee's counsel states that he is not aware of any other case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

BRIEF OF APPELLEE, UNITED STATES

2016-1298

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ESTES EXPRESS LINES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in No. 11-CV-0597, Judge Lydia K. Griggsby

## STATEMENT OF THE ISSUE

Whether the United States Court of Federal Claims correctly dismissed for lack of jurisdiction the complaint of plaintiff-appellant, Estes Express Lines (Estes), because Estes failed to submit a certified claim to the contracting officer before commencing suit, as required by the Contract Disputes Act of 1978 (CDA), codified as amended at 41 U.S.C. §§ 7101-7109.

## STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

### I.    Nature Of The Case

This case involves a dispute over whether the Government must pay twice for appellant's transportation of merchandise to various Marine Corps Exchanges (MCX).  MCX contracted with now-defunct Salem Logistics, Inc. (Salem) to provide transportation and freight management services.  The contract called for MCX to pay Salem and for Salem to pay freight carriers.  Estes served as the carrier for certain shipments made under MCX's contract with Salem.  As Salem approached its demise, it stopped paying carriers, such as Estes.  When MCX became aware that Salem was not paying carriers, MCX terminated its contract with Salem.

MCX contacted Estes and obtained a listing of Estes's outstanding invoices.  For invoices on which MCX had not already made payment to Salem, MCX agreed to pay Estes directly, upon receipt of a certified claim for those invoices.  As requested, Estes provided a certified claim for that $28,931.28, and MCX paid that amount to Estes.

MCX would not agree, however, to pay Estes on invoices for which MCX had already paid Salem.  Estes brought this action to try to recover those amounts from the Government.  The Court of Federal Claims initially dismissed the complaint for lack of privity, and this Court reversed.  *Estes Express Lines v.*

2

*United States*, 739 F.3d 689 (Fed. Cir. 2014). On remand, during discovery, it became apparent that Estes had not submitted a claim requesting a contracting officer's final decision for the amounts it is seeking in this case. Accordingly, the Court of Federal Claims dismissed for lack of jurisdiction. *Estes Express Lines v. United States*, 123 Fed. Cl. 538 (2015) (Appx2-19).

## II.    **Background**

On October 31, 2007, Marine Corps Community Services,[1] which includes MCX, awarded Contract No. H0107-D-0005 to Salem Logistics, Inc. (Salem). Appx60, 64. Salem had already been providing transportation and freight management services to MCX under previous contracts for several years, and Salem was to continue providing these services to MCX under this contract. *See* Appx65. The contract required Salem to make payments to commercial transportation carriers for services rendered in accordance with agreements between Salem and the carrier. Appx61, 71-72. MCX was required to pay Salem when Salem invoiced MCX. *Id.*

According to Estes's complaint, "Salem contracted with Plaintiff [Estes] to carry specified loads for MCX." Appx26 (Compl. ¶ 5). Salem first contacted Estes about moving freight to MCX locations in November 2004. Appx421. At

---

[1] For simplicity, and because the distinction between Marine Corps Community Services and MCX is inconsequential in this case, we use MCX hereinafter to refer interchangeably to both Marine Corps Community Services and MCX.

that time, a Salem representative explained:

> We are moving freight for the Marine Corps PX's or
> Employee stores.  We have moved 1,800 shipments to 10
> different bases since 8/1/2004.  Some of the vendors have
> requested using Estes for their outbound moves to the
> MCX locations.  This is the pricing we have in place with
> other carriers.  Would you please see if you can obtain
> for us.  CZAR 2003 with 70% discount and $65.00
> minimum. . . . The billing would come to MCX % Salem
> Logistics.

*Id.*  By March 2005, Estes had agreed to the pricing terms Salem requested.

Appx422.  Over the years that followed, Estes routinely moved freight to various

MCX locations.

Estes would be dispatched to pick up freight from a shipper, such as M.J.

Soffe, Co., after requests were loaded by the shipper into Salem's electronic

system.  *See, e.g.*, Appx150.  The shipper would provide Estes with a bill of lading

at pickup.  Appx514 (Deposition of Estes Express Lines pursuant to Rule 30(b)(6)

(Estes Dep.) 52:4-13).  These bills of lading were signed by the shipper and Estes's

driver.  *Id.* (Estes Dep. 53:13-17).  Estes's driver would then take the bill of lading,

with the freight, to an Estes terminal facility, where the bill of lading would be

stored.  Appx515 (Estes Dep. 57:12-18).

The bills of lading did not travel with the shipment to its destination.

Instead, a manifest was prepared by Estes, covering all freight on the truck, and the

manifest would travel with the driver to the destination.  Appx516 (Estes Dep.

4

58:1-22).  At each destination, Estes's driver would obtain a signature confirming delivery on an Estes-generated delivery receipt.  *Id.* (Estes Dep. 59).  Estes's delivery receipts did not identify the charges for the shipment.  *Id.* (Estes Dep. 60:20 to 61:11).

After making delivery, Estes generated a freight bill.  Appx509 (Estes Dep. 33:4-24).  Estes addressed its freight bills to "Marine Corps Exchange c/o Salem Logistics" and mailed them to Salem's address.  The reference to MCX in the address information was necessary to allow Salem to determine that the invoices related to its contract with MCX, as opposed to another of Salem's customers.  *See* Appx498 (Deposition of United States pursuant to RCFC 30(b)(6) 65:9-15).

Over the course of their relationship, Estes periodically had difficulty obtaining payment from Salem.  *See* Appx519 (Estes Dep. 73:8-13).  In late 2008 or early 2009, "the payments were being delayed more and more."  *Id.*  In early 2009, MCX personnel became aware that Salem was not paying various carriers.  Appx61.  On February 27, 2009, MCX terminated its contract with Salem for default.  Appx61, 129, 426-27.

Although Salem had periodically failed to make prompt payments to Estes over the course of their relationship, Estes never reported nonpayment to MCX on the account before March 2009, when Estes decided to stop moving freight under this account.  Appx504 (Estes Dep. 11:3-7).  The reason Estes decided to stop

5

moving freight under this account is that it was "told that Salem Logistics was no longer in business." *Id.* (Estes Dep. 10:17-18).

MCX notified Estes in a March 27, 2009 letter that MCX was reviewing carriers' outstanding invoices, with the expectation that MCX would agree to directly pay undisputed invoices for which it had not already paid Salem Logistics. Appx433-34; *see also* Appx428. MCX's March 27, 2009 letter requested that Estes submit information regarding its outstanding invoices to MCX. Appx433. The letter further explained:

> After we have received this information, we will provide back to you a claims package that contains a spreadsheet reflecting what we could determine has not been paid by [MCX] either directly to Salem or to you. We will request, at that time, that you substantiate your claims by sending to Ms. Dupriest [a Retail Operations Program Assistant for MCX], a copy of each invoice, proof of delivery (POD) for each move, and a signed claim statement that we will include in the package. Once your claim is reviewed, we will process payments as quickly as possible.
>
> If you have other outstanding invoices for which you want to submit a claim, please provide the same information as requested previously, but submit in a different package with a separate claim statement.

Appx433-34.

As requested, Estes provided a spreadsheet identifying all of its unpaid invoices. Appx428-32. MCX determined that it had not yet paid $28,931.28 in outstanding Estes invoices, and MCX notified Estes that it would agree to make

payment directly to Estes in that amount.  Appx455.  On July 7, 2009, MCX

provided to Estes a claim certification and spreadsheet identifying the $28,931.28

in invoices for which MCX was willing to make payment directly to Estes.

Appx455-61.  In a separate July 13, 2009 letter, MCX notified Estes that it would

not make any payments on invoices for which it had already paid Salem, and that

Estes should seek payment from Salem for those invoices.  Appx463.

On July 21, 2009, Estes executed the claim certification for the $28,931.28

in outstanding invoices for which MCX had not yet paid Salem.  Appx475, 464.

MCX then prepared a purchase order and paid $28,931.28 directly to Estes for

those invoices.  Appx467-76.

In 2010, Estes commenced suit against several parties, including Salem and

the shipper for much of the freight at issue, M.J. Soffe, Co., in the United States

District Court for the Middle District of North Carolina.  *Estes Express Lines v.

Salem Logistics, Inc. et al.*, No. 1:10-cv-00102 (M.D.N.C.).  Appx41.  Estes settled

its claims against M.J. Soffe, LLC in exchange for payment of $2,500.  Appx477-

81.  Estes's suit against Federal defendants was then transferred to the Court of

Federal Claims.  Appx43-44.  Even though Estes recognizes that it is Salem that is

"directly liable" to Estes, Appx27 (Compl. ¶ 16), Estes did not pursue a judgment

against Salem.

In January 2013, the Court of Federal Claims dismissed Estes's transfer

7

complaint for lack of jurisdiction, finding that Estes was not in privity of contract with the United States. *Estes Express Lines v. United States*, 108 Fed. Cl. 416 (2013). This Court reversed that judgment and remanded. *Estes Express Lines*, 739 F.3d at 694. Discovery commenced in mid-2014 and concluded in early 2015. Appx22-23. During discovery, two things became apparent: (1) there were significant differences between the factual allegations presented at the previous motion-to-dismiss stage and the facts developed in discovery, and (2) the claim Estes was pursuing had not properly been submitted to the contracting officer.

At the close of discovery, the parties cross-moved for summary judgment. With its summary judgment motion, the Government also submitted another motion to dismiss for lack of jurisdiction, this time for failure to request and obtain a contracting officer's final decision before commencing suit. In the summary judgment motions, the parties disagreed widely about the effect of this Court's 2014 decision on remand. While Estes relied heavily on that decision, we asserted that this Court's previous ruling meant only that Estes's allegations were sufficient to survive the jurisdictional challenge we had raised based on the pleadings. Appx410-12. To prevail on remand, Estes needed to prove its allegations. When the factual record developed in discovery told a different story than Estes's allegations, we asked the Court to grant summary judgment in our favor. Appx412-17, 557-58.

8

Ultimately, the trial court found both summary judgment motions moot because Estes had not submitted its claim to the contracting officer, leaving the court without jurisdiction. The trial court granted our motion to dismiss and Estes appealed.

## SUMMARY OF ARGUMENT

Requesting and obtaining a contracting officer's final decision has long been a jurisdictional prerequisite to contract suits in the Court of Federal Claims under the CDA. Because Estes failed to request a contracting officer's final decision on the claim it now pursues, the Court of Federal Claims properly dismissed the complaint. This Court should affirm.

## ARGUMENT

### I.    Standard Of Review

This Court reviews *de novo* the decision of the Court of Federal Claims to dismiss for lack of jurisdiction. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). The plaintiff "bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). If a plaintiff's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

9

Undisputed factual allegations contained in the complaint must be treated as true. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, in resolving disputes regarding jurisdictional facts, a trial court may look beyond the pleadings and inquire into the jurisdictional facts that are disputed. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). Findings of fact by the trial court in that regard are reviewed for clear error. *See id.*

## II.    A Valid Claim And Contracting Officer's Final Decision Are Jurisdictional Prerequisites For A CDA Action

The jurisdiction of the Court of Federal Claims to entertain suits against the United States is limited. *See United States v. Sherwood*, 312 U.S. 584, 587-88 (1941). "The United States, as sovereign, is immune from suit save as it consents to be sued." *Id.* at 586.

The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). For purposes of 28 U.S.C. § 1491(a)(1), "an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States." *Id.*

When the CDA applies, the relevant portion of the Tucker Act is

10

§ 1491(a)(2), which provides, in part, that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41." 28 U.S.C. § 1491(a)(2); *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999). The CDA applies here because it expressly applies to service contracts awarded by the same nonappropriated fund activities identified in the Tucker Act, including MCX. 41 U.S.C. § 7102 ("this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28) . . . .").

The provisions of the CDA operate as limits upon the jurisdiction of the Court of Federal Claims and the United States' waiver of sovereign immunity. *See Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002). In other words, the United States has consented to be sued, and granted jurisdiction to the Court of Federal Claims, only to the extent that the applicable requirements imposed by the CDA have been met. Because waivers of sovereign immunity must be strictly construed in favor of the sovereign, the Court must strictly enforce the CDA's requirements as jurisdictional prerequisites. *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1329.

Those jurisdictional prerequisites include a plaintiff's obligation to submit its claim to the contracting officer for a final decision before commencing suit. *Id.*

11

at 1328; 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.").  "[J]urisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim."  *England v. Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004); *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) ("Jurisdiction requires both that a claim meeting certain requirements have been submitted to the relevant contracting officer and that the contracting officer have issued a final decision on that claim.").

"While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1327 (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997)).  A valid claim must be a "written demand or assertion." *James M. Ellett Const. Co. v. United States*, 93 F.3d 1537, 1542 (Fed. Cir. 1996).  When money is sought, the claim must demand, "as a matter of right," payment in an exact amount, or sum certain. *Id.*  "That the demand is made as a matter of right constitutes the essential characteristic of a 'claim' according to both the FAR [Federal Acquisition Regulation] and the dictionary definitions." *Reflectone, Inc. v. Dalton*, 60 F.3d

12

1572, 1576 (Fed. Cir. 1995) (en banc). Thus, a "voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." 48 C.F.R. § 2.101 (defining "claim"); *Reflectone, Inc.*, 60 F.3d at 1575-76. "The CDA also requires that a claim indicate to the contracting officer that the contractor is requesting a final decision." *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1327; *James M. Ellett Constr. Co.*, 93 F.3d at 1543 n.4. For monetary claims exceeding $100,000, the contractor must provide a certification in accordance with 41 U.S.C. § 7103(b)(1).

After submitting a valid claim, the contractor must allow the contracting officer 60 days from receipt of the claim to issue a final decision. 41 U.S.C. § 7103(f). If the contracting officer does not issue a decision within the time allowed, the contractor may treat the lack of decision as a deemed denial and proceed to litigation. 41 U.S.C. § 7103(f)(5). However, "without a valid CDA claim, there can be no contracting officer decision or deemed denial." *BLR Group of Am., Inc. v. United States*, 96 Fed. Cl. 9, 14 (2010); *see also W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed. Cir. 1983)); *City of Burbank v. United States*, 47 Fed. Cl. 261, 272 (2000) ("if a CO purports to make a final decision on a defective claim, such decision is a legal nullity"), *rev'd on other grounds*, 273 F.3d 1370 (Fed. Cir. 2001).

"An action brought before the Court of Federal Claims under the CDA must

13

be based on the same claim previously presented to and denied by the contracting officer." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (internal quotation omitted).  The Court of Federal Claims "does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision." *AAB Joint Venture v. United States*, 74 Fed. Cl. 367, 370 (2005); *Delaware Cornerstone Builders, Inc. v. United States*, 117 Fed. Cl. 539, 547 (2014).

## III.    Estes Failed To Submit A Valid CDA Claim Before Commencing Suit

The Court of Federal Claims correctly concluded that it lacked jurisdiction because Estes did not submit its claim to the contracting officer for a final decision before commencing suit.  Estes never requested a contracting officer's final decision regarding the amounts it seeks to recover in this action.  The following table summarizes relevant communications between MCX and Estes:

| Date | Event | Reference(s) |
|---|---|---|
| 3/27/2009 | MCX sends letter to Estes indicating that MCX expects to pay carriers directly on invoices for which MCX had not already paid Salem.  MCX asks for information regarding outstanding invoices. | Appx433-34 |
| 3/27/2009 | As requested, Estes emails MCX "a list of all open bills on [its] MCX c/o Salem Logistics account for you[r] review." | Appx428-432 |
| 5/6/2009 | Estes emails a past due notice to MCX. | Appx435-42, Appx537-46 |
| 5/14/2009 | Estes emails MCX an overview of outstanding bills in response to questions from MCX. | Appx547-48 |

14

| 7/7/2009 | MCX notifies Estes that MCX would agree to pay Estes $28,931.28, covering invoices for which MCX had not already made payment to Salem. | Appx455-61 |
|---|---|---|
| 7/13/2009 | MCX sends letter to Estes stating that MCX would not agree to pay Estes on invoices for which MCX had already paid Salem. | Appx462-63 |
| 7/21/2009 | Estes certifies claim for $28,931.28, and subsequently receives payment in that amount from MCX. | Appx464-76 |
| 2/3/2010 | Estes files suit seeking additional recovery. | Appx41 |

The only claim certification Estes submitted was limited to the amounts which it has already received and therefore does not cover the claim Estes now advances in this action.[2]  MCX gave Estes clear instructions, which Estes decided not to follow.  Appx433-34 ("If you have other outstanding invoices for which you want to submit a claim, please provide the same information as requested previously, but submit in a different package with a separate claim statement.").  Estes argues that one or more of the three emails identified above, dated March 27, 2009, May 6, 2009, and May 14, 2009, satisfy the CDA claim requirement.  Appellant's Br. 5-6.  However, as the trial court explained, none of those communications can reasonably be interpreted as a demand for payment or a request for a contracting officer's final decision.  Appx12-15.

---

[2] Estes does not argue that its July 21, 2009 claim certification supplies the jurisdictional basis for this action.  Nor could it make such an argument.  The July 21, 2009 certification expressly referred to invoices for which MCX "has not yet paid Salem Logistics, Inc.," Appx475, and the invoices covered by that certification were specifically identified, Appx471-74.

A.    **Estes's March 27, 2009 Email**

Estes asserts that it "promptly submitted its claim to the Government for all unpaid freight charges via its March 27, 2009 e-mail."  Appellant's Br. 14.  In that email message, an Estes representative stated:

> I would like to thank you again for speaking with me yesterday about this account.  Per our conversation following is a list of all of the open bills on the MCX c/o Salem Logistics account for you[r] review.
>
> (See attached file: USMC all open 03.26.09.xls)
>
> Please let me know if you need any additional information.
>
> I look forward to hearing from you soon and working with you to resolve the past due balance.

Appx428.  Contrary to Estes's contentions, this message does not satisfy the CDA's claim requirement.  The email neither requests a contracting officer's final decision nor demands payment in any specific amount.  *See D.L. Braughler Co. v. West*, 127 F.3d 1476, 1481-82 (Fed. Cir. 1997) ("letter gave no indication that Braughler was seeking a final decision from the contracting officer").  Sending a list of invoices is not the same as making a demand for payment as of right.  *See Reflectone, Inc.*, 60 F.3d at 1576 ("That the demand is made as a matter of right constitutes the essential characteristic of a 'claim' according to both the FAR and the dictionary definitions.").  That is especially the case where the list of invoices are actually invoices Estes had sent to Salem, not MCX.  Moreover, the author's

16

statement that she is "look[ing] forward to . . . working with [Ms. DuPriest] to resolve the past due balance," indicates a desire to negotiate rather than to make a demand and seek a final decision. *See D.L. Braughler Co.*, 127 F.3d at 1482 ("Moreover, Braughler sought to resolve the matter with the resident engineer. ").

As the email message suggests, Estes provided the attached list of invoices because that information was requested by MCX. Appx433 ("If you have not already done so, please submit . . . to Ms. Kimberly DuPriest . . . [an] Excel spreadsheet of all open invoices . . . ."). Thus, the email exchange demonstrates that Estes elected to proceed not by submitting a demand but rather by engaging in the process outlined in MCX's March 27, 2009 letter. *See id.* The problem, however, is that after MCX agreed to make payment directly to Estes for some, but not all, of Estes's unpaid invoices, Estes never followed through with that process by submitting a claim for the amounts for which MCX directed Estes to pursue payment from Salem. Appx463.

### B. Estes's May 6, 2009 Past Due Notice

Estes's reliance on its May 6, 2009 past due notice is no more persuasive. Appx537-546. That letter, which was generated by Estes's electronic collection system, E-Net, Appx508 (Estes Dep. 26:16 to 27:4), cannot be construed as a valid CDA claim. The letter, with subject "Past Due Balance," begins, "This is notification that your account with Estes Express Lines as shown below is past

17

due." Appx538 & Appx435 (more legible copy). There is no indication that the letter was intended to be submitted to a Government contracting officer. Indeed, as noted above, MCX did not have an account with Estes—Salem did. Nor does the letter request a contracting officer's final decision. *See D.L. Braughler Co. v. West*, 127 F.3d at 1481-82.

The letter also fails to demand a sum certain. A purported claim that fails to seek payment in a sum certain is not a valid claim. *Reflectone, Inc.*, 60 F.3d at 1576. "In most cases this means that the contractor must specify the exact dollar amount sought in recovery." *Executive Court Reporters, Inc. v. United States*, 29 Fed. Cl. 769, 775 (1993). To meet the CDA's requirements, a claim must state the amount demanded without equivocation. *See id.* at 774-75 ("The contractor, however, must not only in writing articulate the basis for the claim, but also must make 'a clear and unequivocal statement . . . of the . . . amount of the claim.'").

Estes's May 6, 2009 does not meet this standard. The body of the letter refers to a "total amount due of $177,588.54." Appx435. However, the letter does not explain how this number was calculated. The last page of the letter reflects a "Total Past Due" amount of $66,650. *Id.* The notice fails to provide the unequivocal statement required by CDA.

Even in its brief before this Court, Estes continues to equivocate as to the amount it is claiming. Appellant's Br. 16 ("Estes's claim submission demanded

the discounted amount of $66,650.61, but stated that failure to remit payment will result in the undiscounted charges being levied pursuant to the tariff, resulting in the sum certain amount of $177,588.54."); *id.* at 19 ("Here, Estes is seeking the amount of $37,352.40 in discounted charges, or alternatively, $94,344.20 in undiscounted charges.").  None of these amounts matches the sum Estes is seeking in this case, which is defined by the complaint.  According to the complaint, Estes seeks a judgment of $147,645.33.  Appx28.

Moreover, claims exceeding $100,000 carry a statutory obligation to certify that "(A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor."  41 U.S.C. § 7103(b)(1).  A CDA action cannot be maintained in the absence of proper certification.  *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1329.  Although a certification containing technical defects can often be corrected during litigation, the absence of a certification altogether cannot be cured and necessarily results in a finding that no valid claim was submitted.  *See* 48 C.F.R. § 33.201 ("Failure to certify shall not be deemed to be a defective certification."); 48 C.F.R. § 2.101 (defining "claim") ("a written demand or written assertion by the contractor seeking the payment of money

19

exceeding $100,000 is not a claim . . . until certified as required by the statute"); *Roxco, Ltd. v. United States*, 77 Fed. Cl. 138, 150 (2007) ("[w]hile [the statute] provides a cure for defective certification, this section does not provide a cure for lack of certification"); *Hamza v. United States*, 31 Fed. Cl. 315, 324 (1994). Estes's May 6, 2009 letter neither contains the required certification nor any attempt at a certification. The letter does not even contain a signature.

Estes now attempts to dodge the certification requirement by re-characterizing its claim as one for less than $100,000. Appellant's Br. 19. According to Estes, the $147,645.33 sought in the complaint was the result of an error. Appellant's Br. 7 & n.2. Estes now states that it is due no more than $94,344.20 *at this time*.[3] Appellant's Br. 7, 19. However, whether a claim requires a certification must be determined based on the claim submitted, not events post-dating its submission. Further, Estes may not split its claim exceeding $100,000 into multiple claims to avoid the certification requirement. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990); *Walsky Constr. Co. v. United States*, 3 Cl. Ct. 615, 619 (1983). In this litigation, Estes has made clear that it seeks payment at undiscounted rates. *E.g.*, Appx309. The undiscounted amount stated in the May 6, 2009 past due notice was $177,588.54.

---

[3] Estes's contention that a balance of $37,352.40 remained after subtracting $28,931.28 from $66,650.61, Appellant's Br. 7, remains unexplained. Subtracting $28,931.28 from $66,650.61 leaves $37,719.33, not $37,352.40.

Appx435. A $177,588.54 claim would have required a certification regardless of whether subsequent payments reduce the balance ultimately sought in litigation. Thus, even if the May 6, 2009 communication did request a contracting officer's final decision and were otherwise a valid claim, which it is not, it still required a certification. Estes's suggestion that it is seeking, for now, less than $100,000 is no more than a post-hoc attempt to avoid the jurisdictional obstacle it created for itself.

### C.    Estes's May 14, 2009 Email

Finally, Estes points to a May 14, 2009 email, in which Estes responds to an inquiry from Ms. DuPriest. Appellant's Br. 6. Estes's response states only, "Following is an overview of your outstanding [bills]," and then provides a breakdown by age. Appx547.[4] Once again, this communication provides information, but does not assert a demand for payment as a matter of right, nor does it offer any indication that a contracting officer's final decision was desired.

Indeed, this email exchange, in its entirety, undermines, rather than supports, Estes's position. In the May 11, 2009 message from Ms. DuPriest to which Estes was responding, Ms. DuPriest seeks clarification regarding the amounts Estes had identified as outstanding. Appx548. Although Estes responded with a summary chart of its invoices, Estes made little effort to answer Ms. DuPriest's specific

---

[4] The chart provided by Estes on May 14, 2009 identifies $66,650.61 in bills and an "Amount in Dispute" of $0. Appx547.

inquiries. Appx547-48. Moreover, Ms. DuPriest reiterated MCX's position in her May 11, 2009 email that MCX would "need a claim letter signed from you once final numbers are agreed on." Appx548. Estes did not suggest in response that it thought it had already provided a claim letter. Appx547. Nor did it submit any claim letter regarding the amounts it now seeks after this email exchange. By themselves, Estes's non-actions are determinative on the issue of jurisdiction. But here, the Government specifically advised Estes to submit a claim and Estes did not. The decision of the Court of Federal Claims should be affirmed.

### D.    Government Actions Cannot Substitute For A Valid CDA Claim

Unable to identify a written claim adequate to confer jurisdiction, Estes asserts that other documents, which are admittedly not claims, "are evidence that a claim was submitted." Appellant's Br. 17 (emphasis omitted). Estes points to an unsigned procurement requisition form that had been prepared by Ms. DuPriest, and was produced to Estes during discovery in this case. *Id.* According to Estes, "Ms. DuPriest would have never spent time preparing a form requesting payment of the 'funded' invoices if Estes had not submitted a claim demanding payment." *Id.* at 18. However, Estes's speculation is specifically rebutted by the record.

In a declaration filed with the trial court, Ms. DuPriest explained that she prepared this draft document before MCX's contracting office had made a determination as to what amounts, if any, it would agree to pay directly to carriers.

22

Appx562-63.  The language stating that 'the carrier submitted a completed Freight

Carrier Claim Form' . . . . was included based on the expectation that, if MCX's

contracting officer did decide to pay this amount, Estes would be required to

submit a claim form before" the payment would be processed.  Appx562 ¶ 3.

Ms. DuPriest also confirmed that, to the best of her knowledge, the only clam

certification form Estes submitted was "the one relating to the $28,931.28 that

MCX has already paid to Estes."  Appx563 ¶ 5.

Estes also contends that "the Government issued a final denial letter from

the contracting officer," and that "[t]he letter states that it is in response to Estes['s]

'claim for payment' regarding" amounts already paid to Salem.  Appellant's

Br. 18.  Contrary to Estes's contention, this July 13, 2009 letter from MCX,

Appx463, does not acknowledge receipt of a CDA claim.  Rather, that letter,

versions of which were sent to multiple carriers, states that it is "in response to

your inquiry regarding payment (or your claim for payment)."  *Id.*  In Estes's case,

the applicable language was the "inquiry" portion, because Estes had not submitted

a claim for payment.  Regardless, it is well-established that a purported final

decision is a nullity in the absence of a valid claim.  *See James M. Ellett Constr.*

*Co.*, 93 F.3d at 1541-42 (Fed. Cir. 1996) ("for the court to have jurisdiction under

the CDA, there must be both a valid claim . . . and a contracting officer's final

decision on that claim"); *Skelly & Loy v. United States*, 685 F.2d 414, 419 (Ct. Cl.

1982); *Paragon Energy Corp. v. United States*, 645 F.2d 966, 971 (Ct. Cl. 1981)

("[a]bsent [a] 'claim', no 'decision' is possible"), *aff'd*, 230 Ct. Cl. 884 (1982);

*BLR Group of Am., Inc.*, 96 Fed. Cl. at 14 ("without a valid CDA claim, there can

be no contracting officer decision or deemed denial."); *OK's Cascade Co. v.

United States*, 87 Fed. Cl. 739, 746 (2009); *J.P. Donovan Constr., Inc.*, ASBCA

No. 55335, 10-2 B.C.A. ¶ 34,509 (July 16, 2010) *aff'd*, 469 F. App'x 903 (Fed.

Cir. 2012).

When discovery closed, neither party was able to identify any document that

could satisfy the obligation imposed by the CDA to submit a written claim

requesting a contracting officer's final decision.  The trial court properly dismissed

for lack of jurisdiction.

## CONCLUSION

This Court should affirm the judgment of the Court of Federal Claims.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

/s/ Daniel B. Volk
DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

March 21, 2016                          Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)(7)(B)

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, counsel for appellee, the United States, certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which this brief was prepared, the brief contains a total of 6,524 words.



_____/s/ Daniel B. Volk_____

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 21, 2016, a copy of

the foregoing BRIEF OF APPELLEE, UNITED STATES was filed electronically.


__X__ This filing was served electronically to all parties by operation of the

Court's electronic filing system.

_____/s/ Daniel B. Volk_____


_____ A copy of this filing was served via:

_____ hand delivery

_____ mail

_____ third-party commercial carrier for delivery within 3 days

_____ electronic means, with the written consent of the party being served

To the following address:



_____